UNITED STATES DISTRICT COURT
DISTRICT OF MINNESOTA

National Credit Union Administration
Board, as Receiver/Liquidating Agent of
St. Francis Campus Credit Union, 808
Third Street Southeast, Suite 100, Little
Falls, Minnesota 56345-2143,

        Plaintiff,

v.

CUMIS Insurance Society, Inc.,

        Defendant.

Civil No. 16-139 (DWF/LIB)

**MEMORANDUM
OPINION AND ORDER**

---

Frances Kern, Esq., Office of the Minnesota Attorney General; Glen E. Schumann, Esq., and James F. Baldwin, Esq., Moss & Barnett, PA; and Roy H. "Chip" Chockley, Esq., Wolff Ardis, P.C., counsel for Plaintiff.

Daniel N. Moak, Esq., Briggs & Morgan, PA; F. Joseph Nealon, Esq., and Nicholas T. Moraites, Esq., Eckert Seamans Cherin & Mellott, LLC, counsel for Defendant.

---

## INTRODUCTION

This matter is before the Court on Defendant's Motion for Summary Judgment. (Doc. No. 23.) For the reasons set forth below, the Court denies the motion.

## BACKGROUND

St. Francis Campus Credit Union ("St. Francis") is a credit union with its principal place of business in Little Falls, Minnesota. (Doc. No. 1 ("Compl.") ¶ 4.) CUMIS Insurance Society, Inc. ("CUMIS") insured St. Francis under a fidelity bond, which

insured against, among other things, theft by employees.  (*Id.* ¶ 8 & Ex. C.)  St. Francis was insured under the bond during all relevant times.  (*Id.* ¶ 8.)  On January 23, 2014, St. Francis discovered that one of its managers, Margurite Cofell, had embezzled in excess of $3 million from St. Francis.  (*Id.* ¶¶ 10-11.)  On January 27, 2014, St. Francis informed CUMIS of the discovery of the fraud, which St. Francis was still investigating.  (*Id.* ¶ 12 & Ex. D.)  On January 28, 2014, CUMIS acknowledged receipt of St. Francis's Notice of Loss.  (*Id.* ¶ 13, Ex. E.)

Plaintiff National Credit Union Administration Board was appointed the receiver of St. Francis on February 14, 2014.  (Compl. ¶ 5.)  The receiver was put into place "in whole or in large part" as a result of the theft.  (*Id.* ¶ 10.)  On December 8, 2014, Plaintiff filed a proof of loss totaling $3,086,755.94.  (*Id.* ¶ 14.)

On June 10, 2015, CUMIS sent a letter seeking to rescind the fidelity bond to Raymond C. Leake.  (*Id.* ¶ 15 & Ex. G ("CUMIS Denial Letter").)  Leake was an attorney hired to assist with the bond claim.  (Doc. No. 29 ("Opp.") at 17.)  In its letter, CUMIS explained that its basis for seeking rescission was that Cofell lied on the application for the bond's renewal.  (CUMIS Denial Letter.)  Specifically, Cofell checked "no" to the following application questions:

> Does any director, officer, board committee member, or employee have knowledge of or information regarding any act, error, or omission which might give rise to a claim against them or the credit union, [. . .] which would be covered under . . . the Bond or any of its Endorsements . . . ?
>
> Does any director, officer, board committee member, or employee have knowledge of or information regarding any claims, demands or

>lawsuits currently pending or threatened that may be or have already been brought against them or the credit union?

(*Id.*)[1] Neither party disputes that Cofell lied by checking no because she was stealing from St. Francis at that time. (*See* Compl. at ¶ 23; Reply at 8.)

Included with the CUMIS Denial Letter was a check for the premiums that St. Francis had paid from April 10, 2012 to April 10, 2014. (CUMIS Denial Letter.) The CUMIS Denial Letter also stated that it had already refunded the premiums paid from April 10, 2014 to April 10, 2015. (*Id.*) Leake forwarded the check and the letter to Robert D. Roach, a senior trial attorney for National Credit Union Administration (the federal agency who oversees Plaintiff). (*See* Doc. No. 32 ("Peeples Decl.") ¶¶ 1, 9.) During the mail-sorting process, a clerk separated the check from the letter. (*Id.* ¶ 10.) The check was then forwarded to St. Louis and cashed pursuant to the procedures in place because of the receivership. (*See id.*) According to Plaintiff, the clerk did not understand that the letter was a purported offer for rescission. (*Id.* ¶ 11.)

On January 21, 2016, Plaintiff filed its Complaint seeking a declaration that CUMIS owed coverage under the bond. (Compl. ¶ 33.) On June 13, 2016, CUMIS filed a motion for summary judgment arguing that it rightfully rescinded the bond because either: (1) Cofell's misrepresentation increased CUMIS's risk of loss, which is grounds

---

[1]  Plaintiff argues that because Cofell had to fill out these questions only because St. Francis was seeking an increase in coverage, the misrepresentation should apply to only that increase in coverage and not the entire bond amount. (Opp. at 10-11.) The application, however, provides that CUMIS would not cover any claim arising from undisclosed information on the bond renewal form. (*See* Doc. No. 34 ("Reply") at 10; Doc. No. 26 ("Ruhland Decl."), Ex B.) Thus, St. Francis agreed to exclude, without limitation to the increase in coverage, any claim that arose from undisclosed information known by St. Francis.

for rescission under Minn. Stat.§ 60A.08, subd. 9; or (2) Plaintiff agreed to rescind the bond after receiving the CUMIS Denial Letter and cashing and retaining the premium refund check. (Doc. No. 25.)

## DISCUSSION

I.  **Legal Standard**

Summary judgment is proper if there are no disputed issues of material fact and the moving party is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(a). The Court must view the evidence and the inferences that may be reasonably drawn from the evidence in the light most favorable to the nonmoving party. *Enter. Bank v. Magna Bank of Mo.*, 92 F.3d 743, 747 (8th Cir. 1996). However, as the Supreme Court has stated, "[s]ummary judgment procedure is properly regarded not as a disfavored procedural shortcut, but rather as an integral part of the Federal Rules as a whole, which are designed 'to secure the just, speedy, and inexpensive determination of every action.'" *Celotex Corp. v. Catrett*, 477 U.S. 317, 323–24, 327 (1986) (quoting Fed. R. Civ. P. 1).

The moving party bears the burden of showing that there is no genuine issue of material fact and that it is entitled to judgment as a matter of law. *Enter. Bank*, 92 F.3d at 747. The nonmoving party must demonstrate the existence of specific facts in the record that create a genuine issue for trial. *Krenik v. Cty. of Le Sueur*, 47 F.3d 953, 957 (8th Cir. 1995). A party opposing a properly supported motion for summary judgment "may not rest upon the mere allegations or denials of his pleading, but must set forth specific facts showing that there is a genuine issue for trial." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 256 (1986).

CUMIS moved for summary judgment before any discovery had been conducted. As a general rule, "summary judgment is proper only after the nonmovant has had adequate time for discovery." *Toben v. Bridgestone Retail Operations, LLC*, 751 F.3d 888, 894 (8th Cir. 2014) (internal quotation marks omitted). As a result, the court can elect to defer deciding the motion until the parties have conducted adequate discovery if the nonmovant can demonstrate that "for specified reasons, [the nonmovant] cannot present facts essential to justify its opposition." Fed. R. Civ. P. 56(d); *see also Toben*, 751 F.3d at 894. Specifically, "[t]he party seeking additional discovery must show: (1) that they have set forth in affidavit form the specific facts that they hope to elicit from further discovery, (2) that the facts sought exist, and (3) that these sought-after facts are 'essential' to resist the summary judgment motion." *Toben*, 751 F.3d at 895 (internal quotation marks omitted); *accord Jackson v. Riebold*, 815 F.3d 1114, 1121 (8th Cir. 2016); *Marvin Lumber & Cedar Co. v. Marvin Architectural Ltd.*, Civ. No. 16-887, 2016 WL 6595902, at *3 (D. Minn. Nov. 7, 2016).

## II. Risk of Loss

CUMIS argues that it is entitled to rescind the bond because Cofell misrepresented her theft on the bond renewal application. The insurance contract is governed by Minnesota law. (Compl. ¶ 20.)[2] Minn. Stat. § 60A.08, subd. 9, provides:

> No oral or written misrepresentation made by the assured, or in the assured's behalf, in the negotiation of insurance, shall be deemed material, or defeat or avoid the policy, or prevent its attaching, unless made with

---

[2] CUMIS denied that the bond "is subject to and to be interpreted under the laws of Minnesota." (Doc. No. 15 ¶ 20.) But because both parties rely on Minnesota law for this motion, the Court will apply it as well.

> intent to deceive and defraud, or unless the matter misrepresented increases the risk of loss.

While not plainly apparent, an application for insurance is covered by this section. *Pioneer Indus., Inc. v. Hartford Fire Ins. Co.*, 639 F.3d 461, 466 (8th Cir. 2011) (collecting cases).  Under § 60A.08, subd. 9, an insurer may rescind the contract by showing, among other things, that "the matter misrepresented [on the application] increase[d] the risk of loss." *Id.* at 468 ("An increase in the risk of loss is all that is required in order to trigger application of Minn. Stat. § 60A.08(9); an insurer is not required to further prove that it would never have issued the policy but for the misrepresentations.").  The insurer bears the burden of proving "a misrepresentation increased the risk of loss." *Id.*

Here, it is clear that CUMIS's risk of loss increased due to Cofell's omission that she was stealing from St. Francis.  While Plaintiff argues that CUMIS has not provided any proof that its risk of loss increased as a result of Cofell's misrepresentation, the Court is not persuaded.  CUMIS issued the fidelity bond on the risk of employee theft.  The fact that Cofell was actually stealing changed that risk to a guarantee.  Thus, the Court concludes that Cofell's misrepresentation increased CUMIS's risk of loss on the fidelity bond.[3]

---

3    Additionally, Plaintiff argues that the Court should defer its decision until additional discovery can be conducted to determine:  (1) Cofell's intent when filling out the application; (2) CUMIS's reliance on the representation; and (3) CUMIS's increased risk of loss.  (Doc. No. 30 ("Chockley Aff.") ¶¶ 6-8.)  But under the analysis outlined in *Pioneer Industries*, CUMIS needs to demonstrate only that its risk of loss increased as a result of the misrepresentation, which it has done.  Thus, the issues that Plaintiff has identified are not essential to the Court's determination.  *See Toben*, 751 F.3d at 895.

The only issue for the Court is whether that misrepresentation can be attributed to St. Francis, the insured.  As a general rule, a principal is bound by an agent's authorized actions, and the principal is imputed with the agent's knowledge during those actions. *St. Paul Fire & Marine Ins. Co. v. F.D.I.C.*, 968 F.2d 695, 700 (8th Cir. 1992); *see also* Restatement (Second) of Agency § 278 (Am. Law. Inst. 1958).  An exception to this general rule is that a principal is not imputed with the knowledge of an authorized agent who is acting adversely to the interest of the principal.  *Sussel Co. v. First Fed. Sav. & Loan Ass'n of St. Paul*, 238 N.W.2d 625, 627 (Minn. 1976).  "The refusal to impute knowledge to the principal of an agent who is acting adversely to the principal is an acknowledgment that the usual legal fiction of complete agent-principal communication is unjustified where the agent is acting adversely."  *Grassmueck v. Am. Shorthorn Ass'n*, 402 F.3d 833, 837 (8th Cir. 2005).

The exception is necessarily narrow and requires that the employee be working solely for her own benefit.  Thus, for example, the exception does not apply when an agent commits fraud that benefits the company at the expense of others.  *Kirschner v. KPMG LLP*, 938 N.E.2d 941, 952 (N.Y. 2010) ("The crucial distinction is between conduct that defrauds the corporation and conduct that defrauds others for the corporation's benefit.").  For the exception to apply, therefore, the agent must have acted for solely her own benefit.  Restatement (Second) of Agency § 282; *see also Kirschner*, 938 N.E.2d at 953 ("[F]or the adverse interest exception to apply, the agent must have *totally abandoned* his principal's interests and be acting *entirely* for his own or another's purposes, not the corporation's." (internal quotation marks omitted)).

7

Here, CUMIS argues that this exception does not apply. CUMIS relies primarily on *Pioneer Industries*. (Reply at 7-8.) In that case, after Pioneer's CFO died, Pioneer discovered that the CFO had embezzled more than $500,000 from the company over the previous 11 years. *Pioneer Indus*., 639 F.3d at 463. The company had insurance for theft by employees, but the insurer sought to rescind the contract pursuant to Minn. Stat. § 60A.08, subd. 9. *Pioneer Indus*., 639 F.3d at 465. The insurer argued that it could rescind because the CFO had misrepresented Pioneer's internal controls on the insurance application. *Id.* at 463. Specifically, the CFO had stated that the company had internal controls at all of its locations, when in fact it had the controls at only some of the locations. *Id.* at 464. Pioneer argued that the CFO's misrepresentation could not be attributed to Pioneer. *Id.* at 467. The Eighth Circuit rejected that argument and determined that the CFO's misrepresentations were attributable to Pioneer because Pioneer had specifically authorized the CFO to purchase the insurance. *Id.* Thus, the court of appeals concluded that "any misrepresentations he made were attributable to Pioneer." *Id.*

Plaintiff argues that *Pioneer* does not control because the adverse interest exception was not discussed, and even if it had been, the CFO's interests were not clearly adverse when he filled out the application. (Opp. 9-10.) The Court agrees. First, the issue was never raised in *Pioneer*. (*See* Civ. No. 7-4421, Doc. No. 31 at 6; Doc. No. 41 at 13-14; App. No. 09-3002, Pioneer's Principal Brief at 26-27.) Second, even if it had been raised, it is not clear that the CFO misrepresented the existence of internal controls for solely his own benefit. Indeed, his representations were at least partially true. *See*

8

*Pioneer Indus.*, 639 F.3d at 464.  Moreover, those misrepresentations were not directly related to concealing the CFO's fraud.  Thus, even if the adverse interest exception had been raised in *Pioneer*, it likely would not have applied.

Here, in contrast, Cofell's and St. Francis's interests were directly adverse.  The *only* reason that Cofell did not disclose the existence of her theft was for her own benefit and to the detriment of the company.  Moreover, neither side disputes that was her motive.  (*See* Opp. at 5-6; Reply at 8 ("Plaintiff admits that Cofell lied on the application and did so to conceal her fraud." (citing Compl. ¶ 23)).)  Thus, the adverse interest exception applies to Cofell's misrepresentation on the insurance application.

CUMIS argues, however, that even if the adverse interest exception applies, Plaintiff cannot retain the benefits of Cofell's misrepresentation (the bond) while simultaneously disavowing the misrepresentation.  (Reply at 6.)  CUMIS's argument relies on a general rule of agency law.  *Sussel Co.*, 238 N.W.2d at 628 ("[I]f the principal . . . seeks to retain the benefits of the transaction, he is charged with the agent's knowledge."); *see also* Restatement (Second) of Agency § 282.  Plaintiff argues that this general rule does not apply to the circumstances of this case.  Plaintiff relies on the Restatement (Second) of Agency and cases outside of Minnesota that follow it.  The Restatement provides a specific provision covering this case's precise facts.  Specifically, the Restatement provides that when an embezzler signs for the company's fidelity insurance, which includes a provision representing that "the signer has no knowledge of any prior wrongdoing," then the knowledge of the agent's embezzlement is not imputed

9

to the company as a basis for the insurer to rescind the coverage. Restatement (Second) of Agency § 280, cmt. c.

Neither Minnesota courts nor the Eighth Circuit has addressed this narrow exception. And courts are split, with the issue turning on which party the court decides is best able to bear the risk of loss. Some courts have concluded that the employer is best equipped to identify and put forward trustworthy employees, while other courts have concluded that the insurer, who has at least facially agreed to insure against that very risk, is better equipped to bear the risk and spread it across the market. *Compare In re Payroll Express Corp.*, 186 F.3d 196, 209 (2d Cir. 1999) ("As between the innocent Insured and the innocent Insurer, the former should shoulder the burden created by any falsehoods made by the agent which it chose to represent it in the transaction."), *with BancInsure, Inc. v. U.K. Bancorporation Inc./United Ky. Bank of Pendleton Cty.*, Inc., 830 F. Supp. 2d 294, 304 (E.D. Ky. 2011) ("The very purpose of a financial institution bond is to cover losses caused by an officer's or director's dishonest or fraudulent acts. What protection would the bond provide if the insurer could rescind the bond based on the same fraudulent acts that it purports to cover? Moreover, how would a bank seek to protect itself in this instance?"), *and Everest Nat'l Ins. Co. v. Tri-State Bancshares, Inc.*, Civ. No. 15-1491, 2016 WL 5062155, at *10-12 (W.D. La. Aug. 2, 2016) (following the Restatement).

Here, the Court concludes that because Cofell's only misrepresentation was about the fraud itself—as opposed to misrepresentation tangentially related to the fraud, such as the existence of internal controls—the misrepresentation is not imputed to Plaintiff.

Thus, CUMIS cannot rescind the contract under Minn. Stat. § 60A.08, subd. 9. But the Court reiterates the narrowness of its holding: it is only when an employee who acting adversely to her employer by embezzling from the company misrepresents her knowledge of that embezzlement on an application for fidelity insurance that the employee's knowledge will not be imputed to the company to allow the insurer to rescind the fidelity insurance.

## III.   Rescission

CUMIS also argues that Plaintiff agreed to mutually rescind the fidelity bond. After receiving St. Francis's proof of loss, CUMIS sent a letter explaining the rescission with a check for the premium paid. (CUMIS Denial Letter.) The letter was sent to Ray Leake, who was an attorney hired for the bond claim. (Opp. at 17.) Leake forwarded the letter to Robert Roach, an attorney at the office of general counsel for the federal agency that oversees Plaintiff. (Peeples Decl. ¶¶ 1, 8-9.) During the mail-sorting process, a clerk separated the check from the letter and forwarded the check to St. Louis for cashing pursuant to the standard procedures in place because of the receivership. (*Id.* ¶ 10.)

CUMIS argues that Plaintiff agreed to rescind the contract when it cashed the check after receiving the letter explaining CUMIS's intent to rescind the bond. "Rescission of an insurance contract may be accomplished by mutual agreement." *McQuarrie v. Waseca Mut. Ins. Co.,* 337 N.W.2d 685, 687 (Minn. 1983). "Whether such a rescission has been accomplished depends on the intent of the parties as evidenced by their acts." *Id.* The parties' intent to rescind "must be clearly expressed, and acts and conduct of the parties to be sufficient must be positive, unequivocal, and inconsistent

11

with the existence of the contract." *Levin v. C.O.M.B. Co.*, 441 N.W.2d 801, 805 (Minn. 1989). Generally, whether a party intended to rescind the contract is a question of fact for the jury. *Id.*

In support of its argument, CUMIS primarily relies on *Mutual of Omaha Insurance Co. v. Korengold*, 241 N.W.2d 651 (Minn. 1976) (per curiam). In that case, after filing an action to rescind the contract, the insurer sent to the defendant (an attorney) a letter explaining that the insurer had a right to rescind the contract and included a check for the premiums paid. *Id.* at 652. The defendant cashed the check, and then the insurer moved for summary judgment. *Id.* In analyzing whether the parties agreed to rescind the contract, the Minnesota Supreme Court first noted that rescission cannot be established merely from the insured cashing the premium check. *Id.* Instead, the court concluded that under the facts and circumstances, the defendant had "the requisite knowledge to intend a rescission." *Id.*

Here, like in *Korengold*, CUMIS sent a letter to an attorney explaining its basis for rescinding the insurance contract with a check for the premiums that St. Francis had paid. Also like *Korengold*, the check was cashed. Plaintiff argues, however, that the person cashing the check did not have the requisite knowledge to accept CUMIS's offer for rescission. The Court concludes that, given this early stage, CUMIS has failed to meet its burden of showing that Plaintiff accepted CUMIS's offer for rescission. As the Minnesota Supreme Court noted in *Korengold*, merely cashing the check is not enough to demonstrate rescission. *Id.* Indeed, the court explained that a party could cash the check for "sheer financial necessity" without forgoing its right to enforce the contract. *Id.*

Instead, the party cashing the check must have the requisite knowledge of the insurer's basis for rescission. *Id.* Given the mail-sorting process associated with receivership, CUMIS has not demonstrated that either cashing the check or retaining the funds constituted an unequivocal acceptance of the offer to rescind.

## CONCLUSION

Based on the foregoing, the Court denies Defendant's Motion for Summary Judgment. It should be noted, however, that discovery has not even begun, and it may bear out in discovery that Defendant is entitled to rescission.

## ORDER

Based on the files, record, and proceedings herein, **IT IS HEREBY ORDERED** that Defendant CUMIS Insurance Society, Inc.'s Motion for Summary Judgment (Doc. No. [23]) is **DENIED**.

Dated:  March 17, 2017                s/Donovan W. Frank
                                      DONOVAN W. FRANK
                                      United States District Judge