## UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF MINNESOTA

| | |
|---|---|
| NATIONAL CREDIT UNION ADMINISTRATION BOARD, as Receiver/Liquidating Agent of St. Francis Campus Credit Union, | : |
| Plaintiff, | : |
| v. | : Case No.:  0:16-cv-00139 (DWF/LIB) |
| | :    JURY TRIAL DEMANDED |
| CUMIS INSURANCE SOCIETY, INC., | : |
| Defendant. | : |

### MEMORANDUM IN SUPPORT OF MOTION TO COMPEL

CUMIS Insurance Society, Inc.'s ("CUMIS") motion to compel ("the motion"), seeks the production of 58 allegedly privileged emails which directly relate to a June 10, 2015 letter and check which CUMIS sent to the National Credit Union Administration Board ("the NCUAB") rescinding the insurance contract on which the NCUAB sued in January 2016.  The letter set forth the grounds for rescission and the check returned the premiums for the insurance contract.  The NCUAB cashed the check and has kept the funds for more than two years.  Those actions are the basis for CUMIS's defense of mutual rescission.

As explained below, the NCUAB waived any privilege[1] and the Court should

---

[1]     As a preliminary matter, the emails should be reviewed by the Court *in camera* to determine whether any privilege ever attached since the descriptions of the emails in the NCUAB's Privilege Log lacks the specificity required to allow CUMIS to determine whether the emails contain legal advice. (*See generally* Relevant Parts of Second

order the production of the emails because the NCUAB should not be permitted to defeat CUMIS's defense of mutual rescission by falsely claiming to the Court that it did not have the advice of counsel when it decided to cash CUMIS's check and keep the proceeds.  The emails will likely prove that the NCUAB understood CUMIS's reasons for rescission and that the NCUAB made a knowing and informed decision—<u>with the advice of counsel</u>—to cash CUMIS's check and keep the funds, and, therefore, the NCUAB cannot sue on the insurance contract.

## BACKGROUND

On or about June 10, 2015, CUMIS rescinded the bond at issue and sent a letter explaining the basis of its decision to NCUAB attorney Ray Leake.  Along with the letter, CUMIS sent a check in the amount of $18,795 to the NCUAB returning the premiums paid for the bond.  The NCUAB received the check, cashed it, and has kept those funds to for more than two years.[2]  CUMIS argued that those facts established that the NCUAB agreed to mutually rescind the bond and, therefore, judgment should be entered in CUMIS's favor.  (*See* Memo. Supp. Mot. Summ. J. [Dkt. #25] 8-9; Reply Memo. Supp. Mot. Summ. J. [Dkt. #34] at 11.)

In opposing summary judgment on that issue, the NCUAB argued that it "<u>did not</u>

Amended Priv. Log ("the Log"), Ex. A to Moraites Decl.)

[2]     A second duplicate check for the same amount was automatically issued upon the bond's rescission by CUMIS's computer system and sent to the NCUAB in late June 2015.  That check was also cashed by the NCUAB and the NUCAB has not returned those funds.  Discovery has confirmed that the NCUAB management and its attorneys knew the NCUAB had cashed the checks and was holding the funds from both the original and duplicate check before it filed suit.

have the benefit of counsel prior to cashing the reimbursement premium check." (Pl.'s Resp. to Def.'s Mot. for Summ. J. ("the opposition") [Dkt. #29] at 17 (emphasis added).) While the NCUAB had to admit that at least two attorneys, Ray Leake and Bob Roach, were well aware of the rescission letter and check prior to cashing it,[3] the NCUAB, represented to the Court that "the reimbursement check . . . was thereafter cashed without the benefit of legal review by counsel or an appointed Agent." (*Id.*)

Based, in part, on these representations, the Court denied CUMIS's summary judgment motion. The Court's decision states:

> Plaintiff argues, however, that the person cashing the check did not have the requisite knowledge to accept CUMIS's offer for rescission. The Court concludes that, given this early stage, CUMIS has failed to meet its burden of showing that Plaintiff accepted CUMIS's offer for rescission. . . . Given the mail-sorting process associated with receivership, CUMIS has not demonstrated that either cashing the check or retaining the funds constituted an unequivocal acceptance of the offer to rescind.

(Mar. 17, 2017 Memo. Op. & Order [Dkt. #43] at 12-13 (citations omitted).)

---

[3] The NCUAB informed the Court:

> On or about June 10, 2015, CUMIS sent its purported rescission correspondence together with premium reimbursement check to Ray Leake, an attorney retained to assist with bond claim matters, who forwarded the correspondence and reimbursement check to Robert D. Roach, Senior Trial Attorney in the NCUA's Office of General Counsel.

(Opp'n at 17.)

## THE EMAILS AT ISSUE

At the start of discovery, CUMIS requested, *inter alia*, that the NCUAB produce all documents relating to the June 10, 2015 rescission letter and check. (*See, e.g.,* Pl.'s Resps. to CUMIS's 1st Doc. Reqs., Req. 1, Req. 5, Ex. B to Moraites Decl.) While the NCUAB did not object to any specific request on the basis of privilege, the NCUAB included a general privilege objection in its responses, (Ex. B at 1), and contemporaneously produced a log of documents that are responsive to the requests but were withheld on the basis of privilege, (Ex. A).

A review of the Log indicates 43 emails[4] were sent or received on June 11 or June 12, 2015, by and between <u>at least four NCUAB attorneys</u>, just one or two days, respectively, after CUMIS informed the NCUAB it was rescinding the bond and, critically, <u>ten days prior to the cashing of the check by the NCUAB</u>. An additional two emails were sent or received about a day after the NCUAB cashed the check on June 23, 2015, and five more emails were sent or received the next week on June 29, 2015. Finally, an additional eight emails were sent in November 2015, while the NCUAB was preparing for a December 2015[5] trial against CUMIS in another case in which the

---

[4]     It appears that there are actually only eight different, distinct emails prior to the cashing of the rescission check because the NCUAB logged the same emails repeatedly, as they were held by separate custodians or systems.

[5]     In that case, after a 4-day bench trial, the U.S. District Court for the Northern District of Ohio entered judgment in favor of CUMIS because board members of the credit union in question learned of the subject employee's dishonesty prior to the inception of the bond and, therefore, the bond's termination provision was invoked at inception. *Nat'l Credit Union Admin. Bd. v. CUMIS Ins. Soc'y, Inc.*, No. 1:11 CV 1739, 2016 WL 165379 (N.D. Ohio Jan. 14, 2016). The Sixth Circuit recently affirmed the

NCUAB also cashed a CUMIS rescission check and did not return the money to CUMIS. In total, therefore, 58 allegedly privileged emails were sent or received prior to the filing of the present litigation.[6]

## THE NCUAB WAIVED ANY PRIVILEGE

The NCUAB cannot argue that it had no advice from counsel in opposing summary judgment and then withhold the emails on the grounds that they do contain advice of counsel.  "A waiver of privilege may be implied where 'through an affirmative act, the asserting party has placed the protected information at issue by making it relevant.'"  *Shukh v. Seagate Tech., LLC*, 872 F.Supp.2d 851, 857 (D. Minn. 2012) (*quoting Medtronic, Inc. v. Intermedics, Inc.,* 162 F.R.D. 133, 134–35 (D.Minn.1995); *see also John Doe Co. v. U.S.*, 350 F.3d 299, 306 (2d Cir. 2003) ("The crucial issue is not merely some connection to a judicial process but rather the type of unfairness to the adversary that results in litigation circumstances when a party uses an assertion of fact to influence the decisionmaker while denying its adversary access to privileged material potentially capable of rebutting the assertion.").  "Implied waiver of the privilege will also be recognized . . . when that party makes factual assertions, the truthfulness of which may be assessed only by an examination of the privileged communications or

---

judgment in favor of CUMIS.  *Nat'l Credit Union Admin. Bd. v. CUMIS Ins. Soc'y, Inc.*, No. 16-3140, — F. App'x —,  2017 WL 2198958 (6th Cir. May 18, 2017).  The issue of mutual rescission was not addressed in the District Court's opinion or on appeal.

[6]     At this time, CUMIS is not seeking allegedly privileged emails that post-date the commencement of this litigation.  Moreover, CUMIS is not seeking any privileged communications that do not relate to the letter or the decision to cash the refund check and keep the funds.

documents." *In re Omnicom Grp.*, *Inc. Sec. Litig.*, 233 F.R.D. 400, 413 (S.D.N.Y. 2006); *See also Rhone-Poulenc Rorer Inc. v. Home Indem. Co.*, 32 F.3d 851, 864 (3d Cir. 1994); *United States v. Bilzerian*, 926 F.2d 1285, 1293 (2d Cir. 1991) ("The privilege may implicitly be waived when defendant asserts a claim that in fairness requires examination of protected communications."). As the Eight Circuit has held, "[a]t issue waiver is commonly found . . . when proof of a party's legal contention implicates evidence encompassed in the contents of an attorney-client communication." *Baker v. Gen. Motors Corp.*, 209 F.3d 1051, 1055 (8th Cir. 2000).

As noted above, 43 emails were sent or received prior to the NCUAB's receipt of the letter or the cashing of the rescission check despite the claim by the NCUAB that it cashed the check without the "benefit of counsel." For example, on June 11, 2015—one day after CUMIS informed the NCUAB's attorneys that both its June 10, 2015 rescission letter and its check were coming—an email was sent from longtime NCUAB attorney John Ianno to NCUAB attorney Ray Leake with copies to NCUAB attorney Rob Roach, and NCUAB attorney Dianne Salva. (*See* Ex. A at 1.) The next day, June 12, 2015, an email was sent by Jennifer Murphy, Director of the National Credit Union Administration's Asset Management and Assistance Center, to Elizabeth Martin, NCUAB Liquidation Analyst, neither of whom are attorneys but both of whom were senior NCUAB officials. (*Id.*) In the description column for these emails, however, the NCUAB states they are an "[e]mail discussion among Bob Roach, Esq., John Ianno, Esq., and Ray Leake, Esq., re: rescission letter forwarded to NCUA employees Jennifer Murphy and Elizabeth Martin." (*Id.*) The NCUAB claims both of these emails are

privileged.  If so, both emails contain advice of counsel transmitted by and between the NCUAB, its attorneys, and NCUAB management <u>prior to the cashing of the check at issue</u>.  These emails are just two examples of allegedly privileged emails that pre-date the receipt of the letter or the check and which directly contradict the NCUAB's misrepresentations made in opposing CUMIS's motion for summary judgment that the NCUAB did not have the "benefit of counsel."[7]

As detailed above, the emails are not only relevant to the mutual rescission issue, they could be vital to CUMIS's defense.  If, for example, NCUAB attorneys advised the NCUAB that it could not sue CUMIS if it cashed the rescission refund check and kept the funds, then the emails would prove that there was mutual rescission.  Moreover, the content of the emails, whatever it may be, would certainly help the jury in determining whether the NCUAB had the requisite "knowledge" to "accept" CUMIS's offer of rescission.  In fact, the emails are likely the best evidence of what the NCUAB was thinking when it cashed the checks and decided to keep the funds.

---

[7]     After CUMIS challenged the NCUAB's claim of privilege, the NCUAB asserted a claim that the emails are work product created in anticipation of litigation.  (*See, e.g.*, Ex. A at 1.)  Obviously, if the NCUAB anticipated litigation one day after it was told that CUMIS rescinded the bond and the refund check was on its way, the NCUAB understood CUMIS was rescinding the bond and what the refund check represented.  In any event, the NCUAB cannot continue to credibly claim the check was cashed without "legal review" or "benefit of counsel," while simultaneously claiming its lawyers were already formulating litigation plans before the check was cashed.

## CONCLUSION

When the NCUAB falsely told the Court that it did not have the advice of counsel before it cashed CUMIS's check and decided to keep the proceeds, it waived any privilege and created this quagmire for itself.[8]  The Court should order the production of the 58 emails at issue.


Respectfully submitted,

Date: August 10, 2017

/s/*Nicholas T. Moraites*
F. Joseph Nealon *(Admitted Pro Hac Vice)*
Nicholas T. Moraites *(Admitted Pro Hac Vice)*
ECKERT SEAMANS CHERIN &
        MELLOTT, LLC
1717 Pennsylvania Avenue, N.W., 12th Floor
Washington, DC  20006
(202) 659-6606/6670
(202) 659-6699 Fax
jnealon@eckertseamans.com
nmoraites@eckertseamans.com

---

[8]    In actuality, the NCUAB first put its communications regarding the rescission letter and check at issue by suing on a rescinded contract.  Even if the communications were not already at issue, it is indisputable that the NCUAB's representations in opposing summary judgment put them directly at issue.

Daniel N. Moak (Minn No. 0347474)
BRIGGS AND MORGAN, P.A.
2200 IDS Center
80 South 8th Street
Minneapolis, MN  55402
(612) 977-8721
(612) 977-8650 Fax
dmoak@briggs.com

*Counsel for Defendant,*
*CUMIS Insurance Society, Inc.*