# UNITED STATES DISTRICT COURT
# DISTRICT OF MINNESOTA

| | |
|---|---|
| National Credit Union Administration Board, as Receiver/Liquidating Agent of St. Francis Campus Credit Union, 808 Third Street Southeast, Suite 100, Little Falls, Minnesota 56345-2143, | Civil No. 16-139 (DWF/LIB) |
| Plaintiff, | |
| v. | **MEMORANDUM OPINION AND ORDER** |
| CUMIS Insurance Society, Inc., | |
| Defendant. | |

Steven M. Philips, Esq., and Ariel O. Howe, Esq., Anthony Ostlund Baer & Louwagie PA; and Randall D. Lehner, Esq., and Givonna S. Long, Esq., Kelley Drye & Warren LLP, counsel for Plaintiff.

Daniel N. Moak, Esq., Briggs & Morgan, PA; and F. Joseph Nealon, Esq., and Nicholas T. Moraites, Esq., Eckert Seamans Cherin & Mellott, LLC, counsel for Defendant.

## INTRODUCTION

This matter is before the Court on Plaintiff's Motion to Strike or, in the Alternative, Motion to Dismiss Counts 2 and 3 of Defendant's Amended Counterclaim. (Doc. No. 115.) For the reasons set forth below, the Court grants the motion.

## BACKGROUND

The Court has previously described, in detail, the background facts of this case in its March 17, 2017 Memorandum Opinion and Order. (Doc. No. 43.) St. Francis

Campus Credit Union ("St. Francis") was a credit union with its principal place of business in Little Falls, Minnesota. (Doc. No. 1 ("Compl.") ¶ 4.) CUMIS Insurance Society, Inc. ("CUMIS") insured St. Francis under a fidelity bond, which insured against, among other things, theft by employees. (*Id.* ¶ 8 & Ex. C.) On January 23, 2014, St. Francis discovered that one of its managers, Margurite Cofell, had embezzled in excess of $3 million from St. Francis. (*Id.* ¶¶ 10-11.) On January 27, 2014, St. Francis informed CUMIS of the fraud, which it was still investigating. (*Id.* ¶ 12 & Ex. D.)

Plaintiff National Credit Union Administration Board ("NCUAB") was appointed the receiver of St. Francis on February 14, 2014. (*Id.* ¶ 5.) The receiver was put into place "in whole or in large part" as a result of the theft. (*Id.* ¶ 10.) On December 8, 2014, Plaintiff filed a proof of loss totaling $3,086,755.94. (*Id.* ¶ 14.)

In June 2015, CUMIS sent NCUAB a letter seeking to rescind the fidelity bond. (*Id.* ¶ 15 & Ex. G ("CUMIS Denial Letter").) CUMIS explained that its basis for seeking rescission was that Cofell lied on the application for the bond's renewal. (CUMIS Denial Letter.) Specifically, Cofell checked "no" to the following application questions:

> Does any director, officer, board committee member, or employee have knowledge of or information regarding any act, error, or omission which might give rise to a claim against them or the credit union, [. . .] which would be covered under . . . the Bond or any of its Endorsements . . . ?
>
> Does any director, officer, board committee member, or employee have knowledge of or information regarding any claims, demands or lawsuits currently pending or threatened that may be or have already been brought against them or the credit union?

(*Id.*) Neither party disputes that Cofell lied by checking no because she was stealing from St. Francis at that time. (*See* Compl. at ¶ 23; Reply at 8.)

Included with the CUMIS Denial Letter was a check in the amount of $18,795, representing the premiums that St. Francis had paid from April 2012 to April 2014. (CUMIS Denial Letter.) During the mail-sorting process, a clerk separated the check from the letter. (*Id.* ¶ 10.) The check was then forwarded to St. Louis and cashed pursuant to the procedures in place because of the receivership. (*Id.*) The clerk did not understand that the letter was a purported offer for rescission. (*Id.* ¶ 11.)

Later in June 2015, CUMIS's computer system mistakenly generated a second check—again in the amount of $18,795—and CUMIS sent that check to the NCUAB. CUMIS did not become aware of the second check until 2017. (Doc. No. 105.) When it discovered the error, CUMIS requested that NCUAB return the funds from the second check. (*Id.*) In response, NCUAB sent CUMIS a check in the amount of $37,590—the amount of the two checks issued by CUMIS. *Id.* CUMIS refused to accept the check and returned it to NCUAB. *Id.*

On November 29, 2017, CUMIS filed a motion to amend its answer to add a counterclaim for unjust enrichment. (Doc. No. 96.) NCUAB indicated that it did "not oppose Defendant's Motion to Amend, but reserves the right to assert all defenses to such claim." (Doc. No. 102.) On January 2, 2018, the Court granted CUMIS's motion (Doc. No. 105) and on January 9, 2018, CUMIS filed its amended answer and counterclaim (Doc. No. 106 "Original Counterclaim"). On January 30, 2018, NCUAB filed its answer to CUMIS's counterclaim. (Doc. No. 107.)

On February 20, 2018, and without seeking leave of the Court, CUMIS filed an amended pleading, adding two counterclaims for breach of contract and promissory estoppel. (Doc. No. 114 ("Amended Counterclaim").) NCUAB now moves to strike or, in the alternative, dismiss CUMIS's second and third counterclaims. (Doc. No. 115.)

## DISCUSSION

### I. Legal Standard

Rule 12(f) of the Federal Rules of Civil Procedure provides district courts with liberal discretion to "strike from a pleading an insufficient defense or any redundant, immaterial, impertinent, or scandalous matter." *See also Stanbury Law Firm, P.a. v. IRS*, 221 F.3d 1059, 1063 (8th Cir. 2000). Striking a party's pleadings, however, "is an extreme measure," and motions to strike under Rule 12(f) "are viewed with disfavor and infrequently granted." *Id.*

### II. Analysis

NCUAB argues that Counts 2 and 3 of CUMIS's Amended Counterclaim should be stricken because the period lapsed during which CUMIS was allowed to amend its pleadings as of right, and because CUMIS failed to show good cause for adding the claims now. (Doc. No. 117 at 5.) CUMIS argues that it could amend its pleading as of right pursuant to Fed. R. Civ. P. 15, and that, alternatively, it demonstrated good cause for adding the claims. (Doc. No. 120 at 4-5.)

"A party may amend its pleading once as a matter of course. . . . In all other cases, a party may amend its pleading only with the opposing party's written consent or the court's leave." Fed. R. Civ. P. 15(a). When a party seeks to amend the complaint after

4

the deadline provided in a court's pretrial scheduling order, however, Federal Rule of Civil Procedure 16 applies. *See Sherman v. Winco Fireworks, Inc.*, 532 F.3d 709, 716 (8th Cir. 2008). "A schedule may be modified only for good cause and with the judge's consent." Fed. R. Civ. P. 16(b)(4). "In addition, Rule 16(d) states that a pretrial [scheduling] order controls the course of the action unless the court modifies it." *Sherman*, 532 F.3d at 716 (internal citation omitted). "The interplay between Rule 15(a) and Rule 16(b) is settled in the [Eighth Circuit]. In *Popoalii*, [the Eighth Circuit] stated that '[i]f a party files for leave to amend outside of the court's scheduling order, the party *must* show cause to modify the schedule.'" *Id.* (quoting *Popoalii v. Corr. Med. Serv.*, 512 F.3d 488, 497 (8th Cir. 2008) (citing Fed. R. Civ. P. 16(b) (emphasis in original)). "When a party seeks to amend a pleading after the scheduling deadline for doing so, the application of Rule 16(b)'s good-cause standard is not optional." *Id.*

Therefore, "Rule 16(b)'s good-cause standard governs when a party seeks leave to amend a pleading outside of the time period established by a scheduling order, not the more liberal standard of Rule 15(a)." *Id.*; *see, e.g.*, *In re Milk Prod. Antitrust Litig.*, 195 F.3d 430, 437-38 (8th Cir. 1999) (reasoning that if a court solely considered "Rule 15(a) without regard to Rule 16(b), [it] would render scheduling orders meaningless and effectively [abrogate] Rule 16(b) and its good cause requirement out of the Federal Rules of Civil Procedure").

Here, CUMIS argues that its Amended Counterclaim was proper under Rule 15 because CUMIS filed it within 21 days after NCUAB answered CUMIS's Original Counterclaim. The Court disagrees. "There is no absolute right to amend after the

5

deadline for amendment in a scheduling order, and a court may deny the motion based on undue prejudice to the other party." *Trim Fit, LLC v. Dickey*, 607 F.3d 528, 531 (8th Cir. 2010). The relevant scheduling order set August 1, 2016, as the deadline for amending pleadings. (Doc. No. 22.) The Court's January 2, 2018, Order permitting CUMIS to file its Original Counterclaim did not create a new window of time during which CUMIS could amend its pleadings as of right. (*See* Doc. No. 105.) Consequently, CUMIS could only amend its counterclaim with NCUAB's written consent or the Court's leave. *See* Fed. R. Civ. P. 15(a). CUMIS had neither. The Court is therefore within its discretion to strike Counts 2 and 3 of the Amended Counterclaim as impertinent.

Even construing CUMIS's Amended Counterclaim as including a request for leave, because CUMIS filed the Amended Counterclaim after the scheduling order deadline, under Rule 16(b)(4), CUMIS must show that good cause justifies the addition of their latest counterclaims. *See Sherman*, 532 F.3d at 716 (noting that a pretrial scheduling order controls unless the Court modifies it); *see also* Fed. R. Civ. P. 16(b)(4). The Court finds that CUMIS has failed to show good cause for amendment.

"The primary measure of good cause [under Rule 16(b)(4)] is the movant's diligence in attempting to meet the order's requirements." *Rahn v. Hawkins*, 464 F.3d 813, 822 (8th Cir. 2006). Generally, courts "will not consider prejudice [to the nonmoving party] if the movant has not been diligent in meeting the scheduling order's deadlines." *Sherman*, 532 F.3d at 717; *see, e.g.*, *Bradford v. DANA Corp.*, 249 F.3d 807, 809 (8th Cir. 2001) (reasoning that under Rule 16(b), when the moving party has not shown diligence, the analysis need not proceed to, or consider, the nonmovant's

6

prejudice).  "[T]he 'good cause' standard is an exacting one, for it demands a demonstration that the existing schedule cannot reasonably be met despite the diligence of the party seeking the extension." *Scheidecker v. Arvig Enter.*, 193 F.R.D. 630, 632 (D. Minn. 2000).  "[A] party does not meet the good cause standard under Rule 16(b) if the relevant information on which it based the amended claim was available to it earlier in the litigation." *Grage v. N. States Power Co.*, Civ. No. 12-2590, 2014 WL 12610147, at *5 (D. Minn. Jan. 3, 2014) (citing *Parker v. Columbia Pictures Indus.*, 204 F.3d 326, 340-41 (2d Cir. 2000)).

Here, CUMIS did not act diligently in bringing the two additional counts and three additional paragraphs of factual allegations, all of which pertain to the November 2017 check that NCUAB sent CUMIS.  (*See* Doc. No. 114 ¶¶ 11-13, 19-28.)  Because CUMIS was not diligent, the Court will not evaluate prejudice to NCUAB in evaluating whether CUMIS has shown good cause.  *See Rahn*, 464 F.3d at 822; *Sherman*, 532 F.3d at 717.  When CUMIS filed its motion for leave to file its original counterclaim on November 29, 2017, (Doc. No. 98), CUMIS was aware of all of the factual allegations upon which it bases the two additional counts because the allegations relate to events from early November 2017.  CUMIS acknowledged as much in its earlier briefing regarding the Original Counterclaim:  "NCUAB's agreement to refund and subsequent refusal to do so is also a basis for a claim of breach of contract."  (Doc. No. 98 at 4 n.2.)  "Where there has been 'no change in the law, no newly discovered facts, or any other changed circumstance . . . after the scheduling deadline for amending pleadings,' then [the Court]

7

may conclude that a moving party has failed to show good cause." *Hartis v. Chicago Title Ins. Co.*, 694 F.3d 935, 948 (8th Cir. 2012) (quoting *Sherman*, 532 F.3d at 718.)

CUMIS contends, however, that there were two significant changes between the time it sought leave to file the Original Counterclaim and the time it filed the Amended Counterclaim: (1) in its answer to the Original Counterclaim, NCUAB denied that it made a promise to pay CUMIS; and (2) NCUAB's attorney who made the promise is no longer NCUAB's attorney of record in the case. (Doc. No. 120 at 5.) CUMIS claims that it "refrained from suing the NCUAB based on breach of contract and promissory estoppel, in part, because those theories would have forced CUMIS to list the NCUAB's then-counsel of record . . . as a witness." (*Id.*) The Court concludes, however, that these reasons are not changes in circumstances sufficient to constitute good cause. First, NCUAB's denial did not trigger a breach, nor constitute any other element of a breach-of-contract claim. By its own admission, all of the elements on which CUMIS based its breach-of-contract claim were present at the time it sought leave to file the Original Counterclaim. (Doc. No. 98 at 4 n.2.) Second, CUMIS's alleged decision to not bring the additional counterclaims because it would have required turning NCUAB's then-counsel into a witness was a strategic choice that is irrelevant to the good-cause inquiry. CUMIS has not provided any reasons why the new counts and allegations in the Amended Counterclaim could not have been brought with the Original Counterclaim. *See Freeman v. Busch*, 349 F.3d 582, 589 (8th Cir. 2003) (affirming, under Fed. R. Civ. P. 16(b), the district court's denial of a motion to amend because the movant offered no reasons "to explain why her motion to amend was filed so late").

Based on the foregoing, the Court concludes that CUMIS failed to comply with Fed. R. Civ. P. 16 and the Court's scheduling order, and that CUMIS has not shown good cause for filing the Amended Counterclaim. Consequently, the Court strikes CUMIS's Amended Counterclaim.[1]

**ORDER**

Based on the files, record, and proceedings herein, **IT IS HEREBY ORDERED** that:

1. Plaintiff National Credit Union Administration Board as Liquidating Agent of St. Francis Campus Credit Union's Motion to Strike, or in the Alternative, Motion to Dismiss Counts 2 and 3 of Defendant CUMIS Insurance Society, Inc.'s Amended Counterclaim (Doc. No. [115]) is **GRANTED**.

2. Counts 2 and 3 of Defendant CUMIS Insurance Society, Inc.'s Amended Counterclaim (Doc. No. [114]) are **DISMISSED WITH PREJUDICE**.

Dated: October 4, 2018      s/Donovan W. Frank
                            DONOVAN W. FRANK
                            United States District Judge

---

[1] Because the Court finds that CUMIS failed to show good cause to amend, the Court declines to address the parties' arguments regarding NCUAB's alternative motion to dismiss CUMIS's counterclaims. But if the Court were to apply the Rule 12(b)(6) analysis, the Court would have concluded that CUMIS has failed to allege facts sufficient to state claims for breach of contract and promissory estoppel. First, even if a contract was formed, CUMIS acknowledges that on November 9, 2017, NCUAB fulfilled its obligations by sending $18,795 (plus another $18,795) to CUMIS. (Doc. Nos. 98, 105.) CUMIS's refusal to accept the money does not constitute breach by the NCUAB. *See Parkhill v. Minn. Mut. Life Ins. Co.*, 174 F. Supp. 2d 951, 961 (D. Minn. 2000). Second, CUMIS's promissory estoppel claim fails because even if there was a clear and definite promise, CUMIS fails to allege facts showing that it relied on that promise and changed its position to its detriment. *See Myrlie v. Countrywide Bank*, 775 F. Supp. 2d 1100, 1106 (D. Minn. 2011).