# UNITED STATES DISTRICT COURT
# DISTRICT OF MINNESOTA

| | |
|---|---|
| National Credit Union Administration Board, as Receiver/Liquidating Agent of St. Francis Campus Credit Union, 808 Third Street Southeast, Suite 100, Little Falls, Minnesota 56345-2143,<br><br>      Plaintiff,<br><br>v.<br><br>CUMIS Insurance Society, Inc.,<br><br>      Defendant. | Civil No. 16-139 (DWF/LIB)<br><br><br><br><br><br>**MEMORANDUM**<br>**OPINION AND ORDER** |

---

Ariel O. Howe, Esq., and Steven M. Philips, Esq., Anthony Ostlund Baer & Louwagie PA; Givonna S. Long, Esq., and Randall D. Lehner, Esq., Kelley Drye & Warren LLP, counsel for Plaintiff.

Daniel N. Moak, Esq., Briggs & Morgan, PA; F. Joseph Nealon, Esq., Nicholas T. Moraites, Esq., and Rosa Schware Trembour, Esq., Eckert Seamans Cherin & Mellott, LLC, counsel for Defendant.

---

## INTRODUCTION

This matter is before the Court on cross motions for summary judgment brought by Plaintiff National Credit Union Administration Board ("NCUAB") (Doc. No. 221) and Defendant CUMIS Insurance Society, Inc. ("CUMIS") (Doc. No. 215). For the reasons set forth below, the Court denies both motions.

# BACKGROUND

The Court has previously described, in detail, the background facts of this case in its March 17, 2017 Memorandum Opinion and Order. (Doc. No. 43 ("Order").) The Court will only summarize the relevant facts here. St. Francis Campus Credit Union ("St. Francis") was a credit union insured under a fidelity bond ("Bond") issued by CUMIS. The Bond insured against, among other things, theft by employees. (Doc. No. 1 ("Compl.") ¶¶ 4, 8 & Ex. C.) On January 23, 2014, St. Francis discovered that one of its managers, Margurite Cofell ("Cofell"), had embezzled in excess of $3 million from St. Francis. (*Id.* ¶¶ 10-11.)

NCUAB was appointed the receiver of St. Francis on February 14, 2014. (*Id.* ¶ 5.) The receiver was put into place "in whole or in large part" as a result of the theft. (*Id.* ¶ 10.) On December 8, 2014, Plaintiff filed a proof of loss totaling $3,086,755.94. (*Id.* ¶ 14.)

On June 10, 2015, CUMIS called NCUAB's in house counsel, Robert Roach ("Roach"), to inform the NCUAB that it was rescinding the Bond. (Doc. No. 218 ("Moraites Decl.") ¶ 5, Ex. 1 at 16.) CUMIS also sent an e-mail to NCUAB's outside counsel, Ray Leake ("Leake"), to inform him that CUMIS was rescinding the Bond and that a rescission letter and premium refund check were on the way. (Moraites Decl. ¶ 6, Ex. 2.) CUMIS attached a copy of the rescission letter and the premium refund check to the e-mail. (*Id.*) In the letter, CUMIS explained that its basis for seeking rescission was that Cofell lied on the application for the Bond's renewal. (Compl. ¶ 15 & Ex. G ("CUMIS Denial Letter").

Leake and Roach forwarded copies of the CUMIS Denial Letter and premium check to several individuals at the National Credit Union Association—the federal agency who oversees NCUAB. (Moraites Decl. ¶¶ 6-8, Exs. 2-4.) The recipients included: (1) two attorneys, including Associate General Counsel, John Ianno ("Ianno"); (2) NCUA Liquidation Analyst, Elizabeth Martin ("Martin"); (3) the President of the NCUA Asset and Management and Assistant Center ("AMAC"), Mike Barton ("Barton"), and his Deputy, Donald Klein ("Klein"); and (4) the Director of AMAC's Division of Liquidation and Member Services, Jennifer Murphy ("Murphy"), and Acting Director, Angela Veghts ("Veghts"). (*Id.*)

On June 11, 2015, several attorneys, including NCUA General Counsel, Michael McKenna, corresponded over the strengths and weaknesses of the rescission. (*Id.* ¶¶ 8-9, Exs. 4-5 ("E-mail String").) On June 12, 2015, Roach forwarded the E-mail String to Murphy, who subsequently forwarded it to Martin. (*Id.*) On June 16, 2015, Leake sent Roach a letter with legal advice concerning rescission via overnight delivery. (*Id.* ¶ 9, Ex. 6.) Leake's office e-mailed a copy to Ianno and one of his colleagues. (*Id.* ¶ 10, Ex. 7.)

NCUAB received the original CUMIS Denial Letter and check on June 17, 2015. (*Id.* ¶ 6, Ex. 6.) The check was for $18,790 in premiums that St. Francis had paid from April 2012 to April 2014. (CUMIS Denial Letter.) During the mail-sorting process, a clerk separated the check from the letter. (Doc. No. 32 ("Peeples Decl.") ¶ 10.) The check was then forwarded to St. Louis and cashed pursuant to the procedures in place because of the receivership. (*See id.*) According to NCUAB, the clerk did not

understand that the letter was a purported offer for rescission. (*Id.* ¶ 11.) On June 22, 2015, CUMIS's computer system mistakenly generated a second rescission check. (*See* Moraites Decl. ¶¶ 13(1)-13(2), Exs. 9-10.) NCUAB deposited the second check on June 29, 2015. (*Id.* ¶ 14, Ex. 11.)

On October 29, 2015, Murphy e-mailed Martin to inquire whether the NCUAB "cashed the premium refund when [CUMIS] rescinded the bond," because cashing the check "constitutes acceptance." (*Id.* ¶ 18, Ex. 15.) Martin responded that "[NCUAB] did cash the check," but that she was unsure of how it could have been avoided because "the standard policy is to cash all checks [received]."[1] (*Id.* ¶ 19, Ex. 16.) Murphy advised Martin to "leave [the money]" in NCUAB's account.[2] (*Id.*)

On November 16, 2015, Ianno e-mailed Roach to inquire whether NCUAB had decided to file a complaint against CUMIS. (*See id.* ¶ 20, Ex. 17.) Roach responded that he was discussing the matter with Murphy, Klein, and Barton, but that a decision whether to pursue litigation had not yet been made.[3] (*See id.*) Roach explained that the discussion included the contents of two memos from outside counsel regarding the prospect of litigation for "attempted rescission." (*Id.*) Murphy forwarded the e-mail to Martin and Max Peeples, another NCUA Liquidation Analyst. (*Id.*)

---

[1] Martin advised that the NCUAB cashed both the first and second rescission checks. (Moraites ¶ 19, Ex. 16.)

[2] NCUAB attempted to return the money on November 9, 2017, but CUMIS did not accept it. (Order at 3.)

[3] Roach copied Martin on his response to Ianno. (*Id.* ¶ 20, Ex. 17.)

4

On January 21, 2016, NCUAB filed its Complaint against CUMIS seeking a declaration that CUMIS must provide coverage under the Bond. (Compl. ¶ 33.) Prior to the commencement of discovery, on June 13, 2016, CUMIS filed a motion for summary judgment arguing that it rightfully rescinded the Bond because either: (1) Cofell's misrepresentation increased CUMIS's risk of loss, which is grounds for rescission under Minn. Stat. § 60A.08, subd. 9; or (2) NCUAB agreed to rescind the bond after receiving the CUMIS Denial Letter and cashing and retaining the premium refund check. (Doc. No. 25.) At that time, NCUAB argued that it did not know the premium reimbursement check was coming, and that it did not have the benefit of counsel prior to cashing it. (Doc. Nos. 29, 56.) The Court denied CUMIS's motion but observed that the completion of discovery may render a different outcome with respect to rescission. (Order at 13.)

CUMIS now moves for summary judgment arguing that discovery cleary shows that NCUAB mutually rescinded the Bond when it did not to respond to the CUMIS Denial Letter and cashed and retained the premium refund(s). (Doc. No. 215.) NCUAB also moves for summary judgment arguing that Cofell's fraudulent acts against St. Francis fall within the Bond's coverage for "employee dishonesty," and that NCUAB has satisfied all other conditions for coverage under the Bond. NCUAB argues further that the Bond cannot be rescinded because Cofell's misrepresentations in the Bond application cannot be imputed to NCUAB and because there is no genuine issue of material fact that NCUAB neither acquiesced or otherwise agreed to mutual rescission. (Doc. No. 221.)

5

Alternatively, NCUAB argues that its post-liquidation actions cannot form the basis for any argument of mutual rescission because it is protected by the Federal Credit Union ACT ("FCUA"). (Doc. No. 222 ("NCUAB Memo.") at 16-20.)

## DISCUSSION

**I.     Legal Standard**

Summary judgment is proper if there are no disputed issues of material fact and the moving party is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(a). The Court must view the evidence and the inferences that may be reasonably drawn from the evidence in the light most favorable to the nonmoving party. *Enter. Bank v. Magna Bank of Mo.*, 92 F.3d 743, 747 (8th Cir. 1996). However, as the Supreme Court has stated, "[s]ummary judgment procedure is properly regarded not as a disfavored procedural shortcut, but rather as an integral part of the Federal Rules as a whole, which are designed 'to secure the just, speedy, and inexpensive determination of every action.'" *Celotex Corp. v. Catrett*, 477 U.S. 317, 323–24, 327 (1986) (quoting Fed. R. Civ. P. 1).

The moving party bears the burden of showing that there is no genuine issue of material fact and that it is entitled to judgment as a matter of law. *Enter. Bank*, 92 F.3d at 747. The nonmoving party must demonstrate the existence of specific facts in the record that create a genuine issue for trial. *Krenik v. Cty. of Le Sueur*, 47 F.3d 953, 957 (8th Cir. 1995). A party opposing a properly supported motion for summary judgment "may not rest upon the mere allegations or denials of his pleading, but must set forth specific facts showing that there is a genuine issue for trial." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 256 (1986).

**II.     Analysis**

The Court need only address the issue of mutual rescission, as each party's motion hinges on its outcome.[4]  "Rescission of an insurance contract may be accomplished by mutual agreement." *McQuarrie v. Waseca Mut. Ins. Co.,* 337 N.W.2d 685, 687 (Minn. 1983).  "Whether such a rescission has been accomplished depends on the intent of the parties as evidenced by their acts." *Id.*  The parties' intent to rescind "must be clearly expressed, and acts and conduct of the parties to be sufficient must be positive, unequivocal, and inconsistent with the existence of the contract." *Levin v. C.O.M.B. Co.*, 441 N.W.2d 801, 804 (Minn. 1989).  Generally, whether a party intended to rescind the contract is a question of fact for the jury. *Id.*

CUMIS argues that NCUAB agreed to rescind the Bond when it failed to respond to CUMIS's Denial Letter and cashed and retained the premium refund check(s). CUMIS contends that all relevant managers and at least five attorneys were aware of the CUMIS Denial Letter and check, and that NCUAB received advice on the strengths and weaknesses of the rescission.  CUMIS argues further that NCUAB clearly understood the consequence of failing to respond to the CUMIS Denial Letter and keeping the money.  It contends that NCUAB's written objection and return of an uncashed premium check in a similar matter with a different insurance company clearly demonstrates that NCUAB knew how to oppose rescission.  (Moraites Decl. ¶ 22, Ex. 19.)  CUMIS contends that it

---

[4]     On February 26, 2019, NCUAB moved to supplement the record (Doc. No. 270) with respect to additional facts regarding Cofell's alleged fraud.  CUMIS opposed the motion.  (Doc. No. 272).  While the Court granted NCUAB's motion (Doc. No. 273), the additional information had no effect on the Court's analysis of mutual rescission.

is entitled to judgment as a matter of law because there is no genuine issue of material fact that NCUAB's knowledge and intent to rescind the Bond may be inferred through its conduct.

In support if its argument, CUMIS relies heavily on *Mutual of Omaha Ins. Co. v. Korengold*, 241 N.W.2d 651 (Minn. 1976) (per curium). *Korengold* also involved an insurer attempting to rescind an insurance contract. *Id.* There, the insurer sent the defendant (an attorney) a letter explaining the insurer's right to rescind the contract and included a check for the premiums paid. *Id.* at 652. When the defendant cashed the check, the insurer moved for summary judgment. *Id.* To determine whether the parties agreed to rescind the contract, the Minnesota Supreme Court observed that rescission cannot be established merely when an insured cashes a premium check. *Id.* The court observed that rescission requires requisite knowledge and intent to rescind. *Id.* "Any contrary rule could lead to gross unfairness to an insured who, for various reasons, including sheer financial necessity, may feel compelled to cash a refund check even though he vigorously disagrees that there was any misrepresentation in obtaining the insurance." *Id.* The court concluded that under the facts and circumstances, the defendant had "the requisite knowledge to intend a rescission," and granted judgment in favor of the insurer. *Id.*

CUMIS also relies on *Peterson v. New York Life Ins. Co.*, 185 Minn. 208 (1932). *Peterson* also involved an explanatory letter rescinding an insurance contract with an accompanying premium refund check. *See generally*, *id.* The insured consulted his banker and admitted that he cashed the check because "he needed the money bad." *Id.* at

8

210. One month after cashing the check, the insured attempted to return the money. *Id.* at 209. The Minnesota Supreme Court observed that "the construction of the letter and [the insured's] admitted acceptance and cashing of the check for the reasons stated by him made the rescission by consent a question of law for the court." *Id.* at 211. It further observed that an insured cannot "possibly believe that [it] was entitled to both the returned premiums and the insurance which the premiums had been paid to obtain," and that "an effort a month later to retract was ineffectual." *Id.* at 210-211.

Like the cases it cites,[5] CUMIS also sent a letter explaining the basis for rescinding the insurance contract and included a check for premiums paid. The record now reflects that the CUMIS Denial Letter was read and discussed by several attorneys who advised senior level management on the strengths and weaknesses of the rescission. CUMIS contends that NCUAB had the requisite knowledge to intend a rescission when it cashed the premium refund check.

NCUAB does not dispute that its attorneys and senior level management discussed the CUMIS Denial Letter. NCUAB argues that the correspondence does not contain any

---

[5]  CUMIS also relies on a holding from Colorado Supreme Court to argue that "mutual rescission is effected . . . on the basis of the parties' objective manifestations of assent." *Avemco Ins. Co. v. N. Colo. Air Charter, Inc.*, 38 P.3d 555, 559 (Colo. 2002) (en banc). There, the court observed that "although an insured may offer evidence to rebut the inference of rescission, that evidence must be more than an assertion of a subjective intent not to rescind." *Id.* at 564. Unlike *Avemco*, which is not binding on this Court; there is a question of fact with respect to NCUAB's actions and intent when the check was cashed. As discussed below, the Court finds that NCUAB has provided evidence to support an inference beyond subjective intent that it did not intend to rescind the Bond.

advice or even discussion of whether or not to cash the check. It contends that when the CUMIS Denial Letter arrived, the accompanying premium refund check was separated during the mail-sorting process and forwarded to St. Louis for cashing pursuant to the standard procedures in place because of the receivership. (Peeples. Decl. ¶¶ 1, 8-9.) NCUAB argues that the persons involved in cashing the check lacked the requisite knowledge to intend rescission. NCUAB argues further that it attempted to return the premium refund check to CUMIS, but that CUMIS refused to accept it.[6] NCUAB also contends that when it filed its Complaint challenging CUMIS' attempt to rescind the Bond six months after receiving the CUMIS Denial Letter, it unequivocally demonstrated that it never agreed to rescission. Further, NCUAB cites testimony that it never agreed with CUMIS' decision to rescind the Bond. (Doc. No. 223 ("Long Decl.") ¶ 8, Ex. F at 91.) Finally, NCUAB argues that regardless of its conduct, its actions are shielded from judicial action by the Federal Credit Union Act ("FCUA") pursuant to 12 U.S.C. § 1787(g).[7]

The record reflects that several NCUAB attorneys and high level management knew in advance that a premium refund check was in the mail. CUMIS argues that because these individuals knew the check was coming, the only possible conclusion is

---

[6] CUMIS acknowledges that NCUAB attempted to return $37,580 (the combined total of each refund) in 2017, but argues that two years was too long to wait . (Doc. No. 241 ("CUMIS Opp.") at 2.) (Doc. No. 98 at 3.)

[7] The FCUA provides that with very limited exception, "no court may take any action . . . to restrain or affect the exercise of powers or functions of the Board as a conservator or liquidating agent." 12 U.S.C. § 1787(g).

that when the check was cashed, it was cashed purposefully and with the requisite intent to rescind the Bond. The record also reflects that NCUAB failed to respond to the CUMIS Denial Letter, despite having done so on another attempted rescission with a different insurance company. The Court cannot discern from the record whether these actions arise from blunder or from actual agreement to rescind the Bond.

The Court first observes the peculiarity of any attorney advising the deposit of a premium refund check for approximately $19,000 in lieu of pursuing a three million dollar claim, and then filing a lawsuit. It agrees with CUMIS that the prudent action would have been for some individual privy to the CUMIS Denial Letter to alert the mail room that a premium refund check was expected and should not be subject to normal processing procedures. The Court does not speculate why this did not occur, but cannot conclude as a matter of law that NCUAB unequivocally intended to rescind the Bond when it cashed the check. The Court next observes that aside from inaction, nothing in the record unequivocally demonstrates NCUAB's intent to rescind the Bond.

Unlike in *Korengold*, or *Peterson*, the person who actually cashed the premium check(s) lacked the requisite knowledge and intent to rescind the Bond. The record reflects that the check(s) were deposited in accord with standard operating procedures. While CUMIS cites an October 29, 2015 correspondence to argue that NCUAB understood that cashing the check constituted an agreement to rescind, the same correspondence includes a statement by Martin that she was unsure of how cashing the check could have been avoided because "the standard policy is to cash all checks." (Moraites ¶ 19, Ex. 16.)

11

Similarly, the Court does not speculate on why NCUAB waited so long to return the premium refund(s) after the money was deposited. While *Peterson* included an undeniable assertion that the insured cashed the premium refund check because he needed the money even though he knew it would rescind the policy, there is nothing in the record for the Court to conclude as a matter of law that NCUAB cashed the check with the intent to rescind the Bond. In the November 16, 2015 correspondence that CUMIS cites as indicative of NCUAB's intent to rescind the Bond, the Court observes that there are several references to "attempted rescission." (*See* Moraites ¶ 20, Ex. 17.) Further, Martin testified that she "absolutely [did] not" agree with CUMIS' decision to rescind the Bond. (Long Decl. ¶ 8, Ex. F at 91.) Unlike *Peterson*, the Court cannot conclude as a matter of law that NCUAB's actions unequivocally demonstrate the necessary intent to rescind the Bond.

"In order to grant summary judgment . . . the pleadings, depositions, and admissions on file, together with the affidavits, must show that there is no genuine issue of material fact." *Abdallah, Inc. v. Martin*, 65 N.W.2d 641, 646 (Minn. 1954). Here, fact issues remain with respect to NCUAB's intent to rescind the Bond. Whether NCUAB's actions "clearly expressed" unequivocal intent or opposition to rescind the Bond is a question of fact for the jury. *Levin v. C.O.M.B. Co.*, 441 N.W.2d 801, 804 (Minn. 1989).

Alternatively, NCUAB argues that its post-liquidation conduct is shielded by the FCUA from forming the basis of any argument of mutual rescission. (NCUAB Memo. at 16-20.) The FCUA grants the NCUAB broad authority and discretion with respect to the assets of a liquidated credit union. *See* 12 U.S.C. § 1787(b)(2)(B). This includes the

right to "collect all obligations money due [to] the credit union" and to "preserve and conserve the assets and property of such credit union." *Id.* The FCUA also limits judicial action "to restrain or affect the exercise of powers or function of the [NCUAB] as a conservator or liquidating agent." 12 U.S.C. § 1787(g).

The Eighth Circuit has identified a two-part test to determine when the limitation on judicial action applies.[8] *See Dittmer Props., L.P. v. F.D.I.C.*, 708 F.3d 1011, 1017 (8th Cir. 2013). First, "the court must determine whether the challenged action is within the receiver's power or function; if so [the court] then determines whether the action requested would restrain or affect those powers." *Id.* (internal quotation marks omitted.)

Here, the first prong is met; it is within the NCUAB's power to enforce coverage under the Bond. 12 U.S.C. § 1787(b)(2)(B). NCUAB argues that the second prong is also satisfied because any effort to rescind the Bond based on its post-liquidation conduct, including cashing the premium check, amounts to "an effort to restrain or affect" its collection efforts. (NCUAB Memo. at 20.) It relies on several cases for the proposition that rescission impermissibly restrains or affects banking regulator's exercise of powers as receiver or liquidating agent. *See, e.g. Tri-State Hotels, Inc. v. F.D.I.C.*, 79 F.3d 707, 715 (8th Cir. 1996) (holding that rescinding agreements would act as an impermissible restraint on the ability of the FDIC to exercise its power as receiver); *Freeman v. F.D.I.C.*, 56 F.3d 1394, 1399 (D.C. Cir. 1995) (holding that granting

---

[8] For the purpose of analysis, the Court observes that the protections under the FDIC are nearly identical to those held by NCUAB. Therefore, caselaw involving the FDIC is appropriate for analysis. *See National Credit Union Admin. Bd. v. Zovko*, No. 1:13-CV-1430, 2014 WL 12845411, at n.1 (N.D. Ohio, June 19, 2014).

injunction to prevent foreclosure on home would impermissibly restrain FDIC's authority); *F.D.I.C v. OneBeacon Midwest Ins. Co.*, 883 F. Supp. 2d 754 at 764-65 (N.D. Ill 2012) (holding that the limitation on court action deprived it from rescinding a bond on the basis of alleged fraud).

The Court is unpersuaded. While NCUAB makes a strong argument that 12 U.S.C. § 1787(g) deprives the Court from declaring unilateral rescission, the Court finds NCUAB's argument inapposite to mutual rescission. Mutual rescission, by its definition, "requires an intent to rescind on the part of both parties," and that such intent "may be inferred from the attendant circumstances." *Green Tree Serv'g, LLC, v. DBSI Landmark Towers, LLC*, 652 F.3d 910, 913 (citing *Minn. Ltd., Inc. v. Pub. Utils. Comm'n of Hibbing*, 208 N.W.2d 284, 285-86 (Minn. 1973). The federal regulations governing the NCUAB's authority as a liquidating agent grant it the authority to agree to release assets, claims, and contracts for cash:

> The liquidating agent shall have the power to: sell for cash or on terms, exchange, assign, or otherwise dispose of, in whole or in part, any or all of the assets and property of the credit union, real, personal and mixed, tangible and intangible, of any nature, including any mortgage, deed of trust, chose in action, bond, note, contract, judgment, or decree, share or certificate of share of stock or debt, owing to the credit union or the liquidating agent.

12 C.F.R. § 709.4(e). Therefore, it was within the NCUAB's discretion to cash the premium refund check and agree to rescind the Bond as opposed to pursuing coverage. If the NCUAB intended to rescind the Bond, it would be a restraint on NCUAB's authority to prevent it from doing so.

14

As discussed above, the Court does not speculate on why NCUAB would have rescinded the Bond, nor can the Court conclude as a matter of law that it did rescind the Bond. The Court observes only that it was within NCUAB's authority to do so. Therefore, the Court concludes that a claim for mutual rescission based on NCUAB's conduct related to cashing the premium refund check is not barred by U.S.C. 12 U.S.C. § 1787(g). Permitting a claim of mutual rescission does not "restrain or affect" the NCUAB's collection efforts; instead, it allows the NCUAB to operate within the full breadth of its authority.

## CONCLUSION

The Court finds that issues of fact remain with respect to rescission. It also finds that the FCUA does not shield NCUAB from a claim for mutual rescission. Therefore, the Court denies each party's motion for summary judgment.

## ORDER

Based on the files, record, and proceedings herein, **IT IS HEREBY ORDERED** that:

1. Plaintiff National Credit Union Administration Board's Motion for Summary Judgment (Doc. No. [221]) is **DENIED**.

2. Defendant CUMIS Insurance Society, Inc.'s Motion for Summary Judgment (Doc. No. [215]) is **DENIED**.

Dated: March 15, 2019            s/Donovan W. Frank
                                 DONOVAN W. FRANK
                                 United States District Judge